[No. 22308. Department Two. January 5, 1931.]

HARRY RUDEBECK, *Respondent,* v. PACIFIC COPPER COMPANY, *Appellant.*[1]

*Lloyd L. Black,* for appellant.

*Phil G. Warnock, Earl W. Husted,* and *Stephen F. Chadwick,* for respondent.

MILLARD, J.—This action was brought to recover $1,110.45 for services and supplies. Plaintiff alleged that, pursuant to an agreement with the defendant, he performed nine months' services for the defendant, at the rate of one hundred dollars monthly, in the operation of the defendant's mining claims, and expended for supplies for defendant's employees $310.45, on account of which plaintiff had received from defendant one hundred dollars in payment. The cause was tried to the court, resulting in findings of fact, conclusions of law and a judgment in favor of the plaintiff for the full amount claimed. From that judgment the defendant has appealed.

[1]Reported in 294 Pac. 986.

Appellant contends that respondent had no authority to incur any expenditures, and that respondent is not entitled to compensation for any period subsequent to November 10, 1927, inasmuch as he performed no services for appellant, and was in fact employed by a third party for a considerable portion of the year 1928 prior to May 31, 1928.

Under the terms of an oral agreement entered into September 1, 1927, by the respondent with the appellant, who was operating mining property in Sultan Basin, Snohomish county, Washington, the respondent was to receive one hundred dollars monthly and his expenses. Respondent testified that the agreement was for his services for the period from September 1, 1927, until June 30, 1928. For the reason that appellant failed or refused to pay him for services rendered and supplies furnished, respondent terminated the employment May 31, 1928. The president of appellant corporation testified that respondent was to look after the camp generally, and was to have charge of a bungalow at the camp and the provisions, "and caring for the men and generally supervisor of the property. He was caretaker and custodian." The secretary of appellant corporation testified that the agreement was on a yearly basis, the respondent to be paid one hundred dollars monthly for employment at the mining camp; that the respondent was not to act in the capacity of supervisor of the work on the property, but that he was to supervise the supplies and the camp itself; that is, he had charge of the supplies and was to see that the men were properly cared for and that the supplies were not wasted. From September 1, 1927, to November 10, 1927, the respondent was at the mining camp acting as custodian and supervisor as above described.

Shortly subsequent to September 1, 1927, the president and secretary of the appellant went to New York state, where they were engaged in an endeavor to finance their mining enterprise. They did not anticipate remaining away from Snohomish county for more than thirty days, and made arrangements for extension of credit for supplies for the employees at the camp for the thirty-day period. The president and secretary did not return to Washington until the latter part of April, 1928, therefore it devolved upon the respondent to purchase supplies for the men to keep the camp operating, as the credit appellant had established in September, 1927, was exhausted.

The treasurer of the appellant corporation, who was also a director, was in the state of Washington until some time in November, 1927, when he departed for New York. Prior to his departure, he approved the purchases made by respondent up to that time, and gave him one hundred dollars to cover a disbursement of forty dollars made by respondent prior to September 1, 1927, and sixty dollars for expenses incurred by the respondent subsequent to that date. It fairly appears that, during the time the respondent was employed by the appellant, he expended, and was authorized by appellant so to do, $310.45 of his own funds in caring for the appellant's property, and that he received one hundred dollars on account thereof, leaving a balance due of $210.45. It is clear from the correspondence and the testimony that the respondent, during the life of the agreement, was to receive one hundred dollars monthly, and was to be reimbursed for expenditures made by him in caring for appellant's property. One of respondent's duties was to take any person upon the mining property whom the appellant desired to send there to inspect the property. This

was necessary, as there was no railroad or automobile road to the property.

Respondent remained at the camp from September 1, 1927, until winter closed the mining operations November 10, 1927. The mine can not be operated because of snow and ice from November until the following May or June. When the camp was closed, the respondent collected all the tools and supplies of appellant and placed same in storage for the winter months. He then returned to Index, Washington, as it was understood he would do, to await instructions from the appellant, whose representatives were in New York state, who by letter directed respondent to lay out the summer's work and keep his expenses within a certain amount. Appellant also informed respondent by letter from New York that attention would be given to unpaid labor bills, and in a short time they would send a substantial check to respondent to apply on the amount due to him. There is testimony that, in compliance with appellant's instructions, the respondent, during the winter of 1927-28, endeavored to secure an extension of an electric power line into the basin. Respondent returned to the mining camp some time in May, 1928. There was no occasion for him to go—his agreement did not require him to go to the camp unless conditions so demanded—to the camp prior to that time and subsequent to November 10, 1927.

A considerable portion of the time between January and May, 1928, respondent was employed by the Puget Sound Power & Light Company. This, argues appellant, precludes recovery of compensation by respondent from appellant for that period of time.

The duties respondent performed for the Puget Sound Power & Light Company were in no wise inconsistent with the duties respondent was to perform for the appellant. All of the duties assigned to him by

the appellant, the respondent performed in a satisfactory manner. He was employed by the third party during the time he was waiting under his contract for instructions or the assignment to other duties. His employment by another during the period stated was not in any way a violation of his agreement with the appellant. He was at all times ready and willing to perform every duty under his contract with the appellant, and did perform every service demanded by the appellant and every service to which appellant was entitled under its agreement with the respondent. The appellant suffered no injury by reason of the fact that respondent worked at something else when he could not work under his agreement with appellant. As stated in *Stone v. Bancroft,* 139 Cal. 78, 70 Pac. 1017, 72 Pac. 717:

"The evidence tended to show that plaintiff, during a small portion of the period covered by the suit, assisted another in the publication and sale of a medical book entitled 'Femina,' and it is contended that this was a violation of plaintiff's contract 'to devote his whole time' to the historical works of Bancroft. It appears that Stone was at all times ready and willing to fully perform his contract with Bancroft, but was prevented so doing. He was left, then, either to remain idle or work at something else. This work did not 'interfere with his efforts on behalf of the said History Company.' Bancroft was in no way injured by Stone working at something else when he was not permitted to work under the contract, and cannot be heard to complain thereat. What plaintiff did in connection with the 'Femina' publication did not, therefore, constitute a substantial breach of his contract with appellant, and the jury were warranted in their conclusion to that effect."

We have given careful consideration to all of the evidence, and are of the opinion that the trial court correctly found the facts and rightly concluded that

132

respondent was entitled to recover $900 for services rendered and $210.45 for supplies furnished to appellant's employees.

The judgment is affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur. BEALS, J., dissents.